The next matter, number 232070, United States ex rel. Rosemary Morgan-Lee v. Therapy Resources Management, LLC. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning, Your Honors. Jeremy Friedman for Rosemary Morgan-Lee Appellant. With me at counsel's table is Louise Herman. I'd like to reserve three minutes for my rebuttal. You have three minutes for rebuttal. Thank you. May it please the Court. This case is about the discharge of Rosemary Morgan-Lee because of her efforts to stop her employer, TRM, and her boss, Uma Raja Gopal. Counsel, please. The district court made findings of that. You just stated a proposition which is directly contrary to the findings of that. You are here in the Court of Appeals. This is after a bench trial. The district court issued a 77-page decision. You are not free under our standards of review to state the record differently. So would you like to start over? What is the basis for this appeal? The basis of this appeal is that the judge's findings were predicated on legal error. Which was what? The legal error was that she had not engaged in protected activity until she said— No, no, no. The judge found she had engaged in protected activity. That ruling was in your favor. The judge then went on to find that she had failed to meet her burden to show but for causation. I don't understand why a point which actually was decided in your favor is being argued on appeal as a error which would require us to send the question back. It's a very important question, Your Honor. That is not an answer. Let me answer directly. Please. The error was that she had not engaged in protected activity until November 8th. And by the time November 8th came around, they had already contacted the attorney to arrange for her termination. So the error of law that he committed was that it was not an error, it was not a protected activity until she exceeded her job duties in her efforts to stop. Because only when she exceeds her job duties does she put the employer on notice that she is engaged in protected activity. But in the 2009-2010 amendments to the False Claims Act, they added the opposition clause to the litigation clause. And when a relator is taking efforts to stop Medicare misbilling— This is an argument made in the reply brief. You make two arguments of error of law in the reply brief. They're waived. They were not made in the opening brief. In your opening brief, what was the error of law that you posited? I did make this argument in the opening brief. All right. We'll disagree. I don't want to— What was any other argument of law you made in your opening brief? It was in the opening brief at, in the statement of the judge's decision, it's at page 28 to 30 of the opening brief, protected activity. The judge found that Morgan Lee had protected activity based upon the notice of activity. But he restricted that finding to actions taken in further of a possible QTAM action in excess of the order ordinary duties under the heightened standards of maturity. But since that maturity decision was decided before the 2008, 2009, 2010 amendments, and subsequently because the amendments added the efforts to stop, that meant all of the findings that he had found that she had not engaged in activity when she tried to stop false Medicare billing, adding minutes that weren't performed. That's a classic false claims violation. The finding that she had that they were trying to stop the inflation of the billing, that they were ramping up the billing during the assessment period, and that's why the Congress, that's why the secretary of CMS, they enacted new regulations that would expose this very fraud. And so all of her efforts, when she was going to her boss, her boss was undermining her efforts to undo this false billing. And that's what happened when all of a sudden, then the employer says to her, if you do this, you're going to be terminated, and you're going to be blacklisted. So it is. Counsel, we do have case law since then, which has rejected your argument. Case law. Yes. Could we move to the topic of how you would connect this to the judge's findings, factual findings, that she was terminated because of chronic absenteeism, which started before the date that you think is important, and because she failed to, when asked specifically about the fraud that she saw, she repeatedly refused to give the company that information. Can I address the second one first? Of course. The finding that she refused to provide that information is false. It's directly contrary to the testimony.  You have to show clear error as to that. Yes. You have to show clear error as to that because you can't not read. And the judge accepted the testimony of others that she did not specify what she meant. There were just these vague claims of fraud and whistleblowing. In fact, Exhibit 43 at JA1087 is direct evidence from November 9th where she said, I had already told UMA, the boss, and I had already told regionals where this false charging was going forward. And that's why I had whistleblower protection. Again, we're going back to your rejection of the trial judge's findings on disputed facts. Let me try to compartmentalize this. I asked you to connect the first argument you made to the judge's but-for finding that she had not shown that but-for her whistleblowing she would not have been discharged. You then replied with a factual attack. That's right, Your Honor. Okay. So your first argument depends upon our finding the judge committed clear error as to his second ground of decision. Yes, Your Honor. As you go on to the first ground. In the Duquerre case, Judge Lynch, you had held that you cannot base a decision on speculation, even under Rule 52, that it can be an abuse of discretion when you review the totality of the evidence. And that's what we're asking for, to look for the totality of the evidence after you correct the legal error. And then if you correct the legal error and you see all of her efforts leading up to that October 28th meeting when Oma Rajagopal threatened discharge, you can see there's no question that's causal relation. Counsel, let me ask you. You're mentioning now abuse of discretion, but I'm looking at your briefing and you don't argue that in your main brief, the abuse of discretion. We do argue a brief abuse of discretion. Where do you argue that? We cited the Duquerre case itself, and we said that if you look at the totality of the circumstances of the evidence, there's only one conclusion. In fact, at the summary judgment hearing, the judge said, if I look at this background information. I'm sorry, you're not here on summary judgment. You are here after the bench. If I could just make the point, Your Honor. No, you cannot. That's improper. I'm sorry. Your argument on appeal has to do with the findings at bench trial, and our law is quite clear that whatever happened at summary judgment is no longer relevant. It's a concession by the lawyer when the lawyer said the issue, quote, the issue with respect to fraud is actually encompassed within the decision to terminate. And that was when the judge, Judge Woodlock, had said, I think that a jury would have a hard time with this because she's a hard person. And the lawyer admitted, the lawyer admitted that they were not going to terminate her until after that. I did ask you a question designed to help your case, and it was the judge gave two grounds. One was absenteeism. The other was the failure to substantiate anything about the fraud claims. Thank you. And with respect to the ‑‑ And then I said to you the absentee problems, which the judge also found would have been sufficient, predated the date you think is important. In that same hearing. So what ‑‑ draw the connection for me, please. Okay. The connection is that her absenteeism from November 1st to November 8th was all documented, pursuant to their policy. She had never been written up for any absenteeism. Under their policy, she's allowed to have these leaves of absences. She gave notice. And even the employer admits she was not terminated for those. Now, let's get to the real heart of it. The real heart of it is in the November 20th e‑mail, Rosemary says, I can't do my job. I can't do my job. And so the defendants here, they say we're terminating her. That's enough. She says she can't do her job. Why can't she do her job? Enough. You have rebuttal time. Thank you. Okay. And do not shout at us. Oh, I'm so sorry, Your Honor. That was not my intention. Okay. Let's hear, then, from Mr. Blackman. Please introduce yourself on the record to begin. Charles Blackman for Therapy Resources Management. And may it please the Court, before turning to the merits, I'd just like to update the Court on a development in the District Court that final judgment entered in this matter on January 14th, 2025. Under the relation forward doctrine, the notice of appeal relates forward to that date. Turning to the merits, I'd like to make just a few basic points, Your Honor. Let me ask you one question. I don't think it was totally answered, but I asked counsel, did you raise the abuse of discretion below? What's your position on that? I mean, not below, on the brief. Was that raised on appeal, or that was not raised? Well, I mean, I didn't follow what abuse of discretion that he was referring to in the sense that the Court is sitting as the fact finder just finding the facts. That's what Judge Woodlock did, and he started off with a brief introduction, and then he found the facts. There's not a question of discretion there. A fact finder can view the facts different ways, and his or her choice between them is not clear. There were three elements that the appellant needed to prove in this case, and each of them is factual in its character. And as Judge Lynch pointed out, he did find the first two facts in her favor. It's the third fact that's critical to this appeal, and it's the issue of causation or improper motive. And that is also a factual-based question. After the briefing of this case, the Supreme Court decided the Bostock case, which although Judge Woodlock didn't refer to the Bostock case, the Bostock case explains what but-for causation is. And in many ways, Judge Woodlock was in front of this whole but-for causation issue before the Koloplast case was even decided. And what Bostock says is that but-for causation is established when a particular outcome would not have happened but for the purported cause, and then the court explains that a but-for test directs us to change one thing at a time and see if the outcome changes, and if it does, we have a but-for cause. And that is exactly the test that Judge Woodlock laid out in his decision when he said, and I'm quoting from this decision, the question is whether Ms. Morgan Lee would have been retained at TRM but for her protected conduct. So Judge Woodlock clearly understood what the law that was applied, what law should be applied. The disagreement here is just that he did not find those facts in the way that they would have had him find them. The trial court rehearsed at great length the long history between these parties, particularly in 2011 as the October 2011 rule changes were coming into effect. He talked about the springtime period, the summertime period, the fall into September and early October, and he found over my arguments that she was engaging in protected activity, but he thought it was very significant to his decision that even though she was engaging in this protected activity, the company did not do anything adverse. There was no disciplinary action taken. In fact, he also took great pains to point out that in many cases, Ms. Rajagopal either disciplined employees when it was brought to her attention or she tried to smooth relations or she tried to do the kinds of things that managers do by better team building. And even as, and she might not have always disciplined her employees in the way that Ms. Morgan Lee would have liked or to Ms. Morgan Lee's satisfaction, but the trial court found that throughout that time, there was nothing disciplinary coming against Ms. Morgan Lee. There was also testimony from Ms. Morgan Lee that the judge didn't touch on. If I'm following, your brother says that there was an error of law committed in holding her to too high a standard because of her job duties and that if that error had not been committed, the judge would have put the date of protected activity and company knowledge earlier than November 8th. You have just said the record shows even after November 8th, they took no action to discharge her. They tried to work with her for a longer time. I take it that the inference to draw from that is that even if the date were earlier, that same finding that the company took no action other than to try to work with her and so even if this were an error, at most, it was a harmless error. Well, counsel, before you answer, the clock, the timer is not moving. I think you've done about seven minutes. I'm sorry, Judge. Continue. Thank you, Your Honor. I hadn't noticed anyway. I do not mean to suggest that the company didn't take any action after November 8th. That's, of course, when things really heat up. The time period that I was referring to was September and October into that time frame. But as long as Your Honor brought it up, this notion of a heightened standard for compliance-based employees speaks to the issue of notice to the employer. It doesn't have to do with the employer's motive, and it also doesn't have to do with what is protected activity. And the reason for the rule that's set forth in Materi and many other courts of appeals cases is that when a person charged with compliance is doing their ordinary job, the employer might not notice that they were doing anything other than their normal job. And it kind of points in favor of being just more clear and less cryptic. If a compliance employee wants to say, I believe that what the company is doing is committing fraud on the federal government, he or she should say that. His argument is Materi does not withstand the amendments to the False Claims Act, assuming he hasn't waived the argument. What's your response? He does make that argument for the first time in his brief, and I would respectfully suggest to the Court His reply brief. Reply brief, yes. I would respectfully suggest to the Court that what the fair amendments do is two things. First, it changes who can be sued, who are the defendants in an FCA case. And second, it broadens the definition of what is protected activity. It doesn't do anything to change the requirement of notice to the employer. And there's a case that Judge Zobel wrote in 2015 that explains that point as well. Counsel, let me ask you a different question. Your client's disciplinary policy provides that failure to work is grounds for written warning. And was there a written warning here before Morgan Lee was actually fired, or that didn't happen? There was an email that said, Dear Rosemary, your attendance from work is becoming problematic, and we need you to show up at work. And I think that that email, if memory serves me, might have been around November 2nd. So it doesn't have to be a warning for her employment record. It can be just a warning email. It could be a letter. Does that amount to a written warning, an email? I would think that that's a warning. But I think more importantly, coming back to the judge's findings, is that he was watching this relationship deteriorate over the month of October. And there is this meeting that takes place on October 28th, and it's something that my colleague referred to earlier today. But there were two views of that meeting. One is that Ms. Roger Gopal stood in front of 20 people and said, If any of you has the effing balls to report fraud, I'll make sure that you never work in the industry again. And certainly if that testimony had been believed, that would be pretty clear direct evidence of a threat. But the trial judge didn't make that finding. To the contrary, the judge went out of his way to say that he heard two views of the evidence, and he actually believed Mr. Scott's testimony, that Mr. Scott had been at that meeting, and that it didn't happen that way. In fact, what we also know happened, based on Ms. Morgan Lee's testimony, is that she had a heated conversation with Ms. Roger Gopal shortly after that. She hung up on her supervisor. There were a lot of things going on in Ms. Morgan Lee's personal life, which I understand that Judge Whitlock did not get into. But Ms. Morgan Lee's testimony was consistent with the fact that Ms. Roger Gopal was really trying to help her throughout the time period that she was appearing to be under family stress, even saying, Look, I know you've had some family issues. Counsel, could you get back to your opponent's case? His second claim is that the evidence did not support the finding that she failed to provide more detailed description of what the fraud was, although she was asked numerous times to do that. Put aside the question of waiver, that does also appear in the reply brief. What is the response to that? The response is that after the absenteeism, which took place, say, the first week of November, there were these e-mails that one could say were erratic, but there was some cryptic references, including one to the Whistleblowers Protection Act. At that point in time, I think that e-mail might have been written November 9th or so, something like that. There was supposed to be a meeting with Ms. Morgan Lee the following Monday. The company reached out to counsel to meet with her. That was Mr. Blackman. Mr. Blackman and Mr. Scott met with her that day in an effort to find out what she was talking about. This is consistent with what a company should do when they are confronted with what are potentially serious accusations. And I would point the court to the Yusidian case out of the D.C. Circuit. What were the factual findings, please? Relative to that issue? Yes. The court found that she was asked by Mr. Blackman and Mr. Scott. The court found that she had had conversations with the owners, that she didn't describe what she was talking about. The court found that finally by November 20th, when the letters were in the more formal letter that says you made these vague allegations, we've been trying to meet with you. There was supposed to be a follow-up meeting on November 18th that she didn't attend. There was no letter after the November 20th letter that said I'd like to sit down and tell you what I know. None of that happened in this case. And we found out from the testimony of Attorney Moser that that was deliberate. So she deliberately withheld that information from the company because she was trying to put her FCA case in the best position possible. If the court doesn't have any further questions, I am happy to rest on my brief. Okay. No further questions. Thank you. Thank you. Counsel, Mr. Friedman, you have three minutes for rebuttal. Thank you, Your Honors. Jeremy Friedman for Rosemary Morgan Lee. The question about providing more information about the fraud as a legal matter, that is related to a protected activity. It's not a legal matter. There were factual findings that she was asked numerous times, including in the conversations with the owners, and she never got any more specific. Those are fact findings. As a legal matter. Okay. As a factual matter, it's not supported in the record. Exhibit 50JA1097. She says, I'm perfectly happy to provide you this information. I'm so glad you're investigating it. And then she doesn't. She was fired then. She was then terminated. She had been asked numerous times to specify. I'm sorry, Your Honor. Okay. Just take that as given factual findings that have adequate support in the record. At the November 14th. Okay. What is the legal error that you say would entitle us to ignore those factual findings? The finding that she's fired because she alleged fraud but then did not give them satisfactory information about the fraud is related to the protected activity. You cannot terminate somebody lawfully for saying that you've engaged in fraud but not providing more information. If you use the Bostock measure and you remove the argument is if an employee mentions fraud but repeatedly refuses to provide details as to what it is, that that is all that is required. That it doesn't become a justification, a non-retaliatory justification for terminating her when she alleges. It's from the Bostock measure. Think of the rule you're asking us to set up. An employee with absentee problems who says late in the game, I'm a whistleblower. She's asked to meet with counsel for the company, which is what companies are supposed to do. She refuses to give any other information. You're saying that it's an absolute defense to merely use the word fraud and refer to yourself as whistleblower. Then wouldn't that knock out the but-for causation prong of the test? The but-for causation requires you to remove the protected activity. So if she never alleged fraud, they never would have called her in there, Mr. Blackman, my friend. Okay, so you are arguing all that it takes is an allegation of fraud. Your Honor, I just don't think that that's... An employee uses the word fraud. It's not the fact that she just used the word fraud. This record is undisputed that she had told her boss, the supervisor, who was telling her, the president of the company, to falsify the records. Now we're back into the credibility. Just on the legal issue. I don't think the factual record is supported. But the legal issue is you have to say if she never engaged in the protected activity. And if you're going to say alleging that there's fraud going on... Anything else? If you remove that element, if she never engaged in the... I'm sorry, Your Honor. I'm trying to answer your questions. You have made that point five times now. Do you have anything else to add? Yes, I have the Exhibit 51... I'm sorry, Exhibit 12, the end of employment letter. It says you're being terminated. You're ending your employment because you stirred the pot by asking for an independent investigation. You've alleged fraud. You're reporting to the owners. And this status quo cannot remain. We'll look at Exhibit 12. Thank you. Thank you, Your Honors. Thank you, Counsel. That concludes argument in this case.